IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**THERESA DENIS PINSON,**                 Case No. 3:18 CV 12

    Plaintiff,

    v.                                              Magistrate Judge James R. Knepp, II

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.                      MEMORANDUM OPINION AND ORDER

INTRODUCTION

Plaintiff Theresa Denis Pinson ("Plaintiff") filed a Complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision to deny disability insurance benefits ("DIB"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). The parties consented to the undersigned's exercise of jurisdiction in accordance with 28 U.S.C. § 636(c) and Civil Rule 73. (Doc. 11). For the reasons stated below, the undersigned affirms the decision of the Commissioner.

PROCEDURAL BACKGROUND

Plaintiff filed for DIB in October 2014, alleging a disability onset date of January 2, 2012[1]. (Tr. 184-85). She had a date last insured of December 31, 2014. *See* Tr. 70, 87. Her claims were denied initially and upon reconsideration. (Tr. 106-08, 110-12). Plaintiff then requested a hearing

---

1. Plaintiff originally alleged an onset date of July 15, 2009 due to degenerative disc disease, post-traumatic stress disorder ("PTSD"), spinal stenosis, anemia, arthritis of the left shoulder, hernias, chronic menstrual bleeding, mitral valve prolapse, and hypertension. (Tr. 213, 217). Plaintiff later amended her alleged onset date to January 2, 2012. (Tr. 34). As an aside, the ALJ's decision uses January 12, 2012 as the alleged onset date. (Tr. 10). Neither party raises this as an issue, and it appears to be a typographical error, as Plaintiff identified January 2, 2012 in her oral motion to amend. *See* Tr. 34. Regardless, any such distinction does not make a difference in the outcome herein.

before an administrative law judge ("ALJ"). (Tr. 122-24). Plaintiff (represented by counsel), and a vocational expert ("VE") testified at a hearing before the ALJ on October 12, 2016. (Tr. 31-69). On February 21, 2017, the ALJ found Plaintiff not disabled in a written decision. (Tr. 10-25). The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1-3); *see* 20 C.F.R. §§ 404.955, 404.981. Plaintiff timely filed the instant action on January 2, 2018. (Doc. 1).

## FACTUAL BACKGROUND

Personal Background and Testimony

Plaintiff was born in January 1962, making her 50 years old on her alleged onset date, and 54 years old on the date of the hearing. *See* Tr. 34, 213. She alleged disability due to degenerative disc disease, post-traumatic stress disorder ("PTSD"), spinal stenosis, anemia, arthritis of the left shoulder, hernias, chronic menstrual bleeding, mitral valve prolapse, and hypertension. (Tr. 213, 217). Plaintiff had past work in retail as an assistant manager and salesperson. (Tr. 218).

When she filed for disability in the fall of 2014, Plaintiff thought she could no longer work due to neck and back pain. (Tr. 35). Plaintiff testified that it was "hard for [her] to do anything", and she was not getting better. *Id*. She saw Dr. Evanoff, her family physician, twice per year for pharmacological management of her pain symptoms. (Tr. 35-37, 39).

Plaintiff "sometimes" grocery shopped with her husband. (Tr. 53). She could lift a gallon of milk on her own but testified that it was sometimes difficult. (Tr. 54). Plaintiff estimated she could not lift a gallon of milk more than four times per hour. *Id*. Plaintiff estimated she spent fifteen minutes at a time, on average, in a grocery store and noted that she would be in pain after running the errand. (Tr. 54-55). Around the house, she washed dishes, loaded the dishwasher, and folded "a little" laundry. (Tr. 60-61).

In late 2011, Plaintiff and her husband got rid of their farm animals because she was unable to carry a bucket of feed corn to the cows due to pain. (Tr. 56-57). Plaintiff estimated the feed bucket was a three- to four-gallon bucket. (Tr. 57).

Plaintiff also had trouble sleeping. (Tr. 59). Plaintiff testified she slept two hours per night and often woke due to neck pain, nightmares, and racing thoughts. *Id*.

Relevant Medical History[2]

In April 2009, Plaintiff saw neurosurgeon Patrick McCormick, M.D., for neck, shoulder, and lower back pain. (Tr. 286). Plaintiff reported her pain resulted from a recent car accident. *Id*. She reported her "baseline" low back and neck pain ranged from 5/10 to 6/10 but increased to 8/10 with activity. *Id*. On examination, Plaintiff had a limited range of motion in her neck and left shoulder, but had a full range of motion in her right shoulder without discomfort. (Tr. 287). Dr. McCormick explained the cervical MRI results showed "significant disk herniation at C5-C6, effacement of [cerebrospinal fluid], and right paracentral compromise of cord and root." *Id*. Further, a lumbar MRI revealed an L5-S1 broad-based protrusion without loss of disc space height

---

2. The relevant time period for consideration in this case is January 2, 2012 (alleged onset date) to December 31, 2014 (date last insured). *See Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990) ("In order to establish entitlement to disability insurance benefits, an individual must establish that he became "disabled" prior to the expiration of his insured status."). Therefore, the undersigned summarizes the medical records relevant to Plaintiff's impairments during that time, with a brief summary of a relevant visit prior to her alleged onset date. Post-dated evidence is immaterial unless it relates back to the period under review. *See Pickard v. Comm'r*, 224 F. Supp. 2d 1161, 1171 (W.D. Tenn. 2002); *Strong v. Comm'r of Soc. Sec.*, 88 F. App'x 841, 845 (6th Cir. 2004) ("Evidence of disability obtained after the expiration of insured status is generally of little probative value."). Herein, the undersigned summarizes a later dated neurology appointment with MRI results, as well as later-dated opinion evidence relevant to Plaintiff's arguments.

Further, Plaintiff alleged disability based on both physical and mental conditions, *see* Tr. 217, and there are both physical and mental health treatment records. However, in her brief, Plaintiff only challenges the *physical* limitations in her RFC. Therefore, the undersigned only summarizes the medical records relevant to Plaintiff's physical impairments. *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003).

and no obvious signs of compromised neurologic structures. (Tr. 287-88). Plaintiff wanted to proceed with surgical intervention. (Tr. 288).

In May 2012, Plaintiff saw her primary care physician, John Evanoff, M.D., for fatigue and weight gain. (Tr. 312). On examination, Dr. Evanoff found Plaintiff had a normal gait with no mobility limitations and full upper and lower extremity strength. (Tr. 313). Dr. Evanoff diagnosed fatigue and hypothyroidism. *Id*. In June 2012, Plaintiff saw Dr. Evanoff for left shoulder pain. (Tr. 310). Examination revealed "no real tenderness or range of motion limitations in the left shoulder," however, he found the pain emanated from Plaintiff's C6-C7 vertebrae, and traveled into her left arm down to her left elbow. (Tr. 311). Dr. Evanoff opined this pain was consistent with a cervical nerve root impingement. *Id*. He diagnosed a bulging cervical disk and referred Plaintiff to a neurosurgeon. *Id*.

Plaintiff saw Dr. Evanoff again in November 2013 for pain "all over" possibly the result of a car accident which happened "a while back". (Tr. 305). On examination, Plaintiff had a normal gait, full strength in her upper and lower extremities, and no mobility limitations. (Tr. 307). Dr. Evanoff opined Plaintiff's pain was likely the result of previous cervical disc issues which she had yet to repair. *Id*.

In February 2014, Plaintiff saw John Brunner, M.D., for hypothyroidism. (Tr. 397). On examination, Plaintiff had normal motor strength in her upper and lower extremities. (Tr. 398).

Plaintiff treated with Dr. Evanoff again in June 2014, complaining of pain in her legs and ankles. (Tr. 303). On examination, Dr. Evanoff found Plaintiff's cranial nerves were intact, and she had normal sensation. (Tr. 304). Dr. Evanoff diagnosed Achilles tendonitis and restless leg syndrome; he prescribed medication. *Id*. In July, Plaintiff returned to Dr. Evanoff reporting shooting pains when stretching and when she elevated her legs. (Tr. 299). Medication helped but

4

did not resolve the pain. *Id*. Dr. Evanoff diagnosed Achilles tendonitis and recommended a heel cup. (Tr. 301). In November 2014, Plaintiff saw Dr. Evanoff for bronchitis symptoms with no mention of leg pain. (Tr. 296).

Plaintiff attended a consultative physical examination by Sushil Sethi, M.D., in February 2015. (Tr. 362-64). Dr. Sethi found mild tenderness in the acromioclavicular joint bilaterally, with no sign of shoulder impingement. (Tr. 363). Plaintiff had normal: shoulder and elbow range of motion; grasp, pinch, manipulation, fine coordination; and range of motion in her cervical and thoracic spine with no swelling, redness, or deformities. (Tr. 363-64).

In September 2016, Plaintiff saw neurologist Stanford Rapp, D.O., for tingling and numbness in her right arm. (Tr. 417). On examination, Plaintiff had a normal gait with no ataxia or unsteadiness, and normal strength in both lower extremities (Tr. 419-20). She had weakness in her right upper extremity, with normal strength in the left. (Tr. 420). Dr. Rapp diagnosed right arm weakness. *Id*. Later that month, a cervical MRI revealed moderate disc disease at C5-C6 with some degenerative change at C1-C2. (Tr. 450). At C3-C4, Plaintiff had left (greater than right) uncovertebral and "endplate hypertrophic changes with minor disc bulge causing mild to moderate foraminal narrowing without significant central stenosis". *Id*.

Opinion Evidence

In February 2015, Dr. Sethi opined Plaintiff's hearing, speaking, and ability to travel were normal, but her ability to sit, stand, walk, lift, carry, and handle objects "may be slightly affected" by her physical conditions. (Tr. 364).

Later in February 2015, State agency physician Bradley Lewis, M.D., reviewed Plaintiff's medical records and offered a physical residual functional capacity assessment. (Tr. 79-81). Dr. Lewis opined Plaintiff could occasionally lift/carry 50 pounds; frequently lift/carry 25 pounds; and

5

stand, sit, or walk approximately six hours in an eight-hour workday. (Tr. 79). He found Plaintiff had an unlimited ability to push and pull, balance, and climb ramps and stairs. (Tr. 80). Additionally, Plaintiff could occasionally crawl and climb ladders, ropes, and scaffolds; she could frequently stoop and crouch. *Id*. Finally, Dr. Lewis opined Plaintiff had a limited ability to reach overhead bilaterally, but was unlimited in her ability to handle, finger, and feel. *Id*.

In July 2015, State agency physician Rannie Amiri, M.D., reviewed Plaintiff's medical records and opined she could only occasionally lift/carry twenty pounds and frequently lift/carry ten. (Tr. 96). She found Plaintiff was unlimited in her ability to climb ramps and stairs, balance, kneel, and crawl; she could frequently climb ladders, ropes, and scaffolds, stoop, and crouch. (Tr. 97). Dr. Amiri opined Plaintiff had no manipulative limitations. *Id*.

VE Testimony

A VE appeared and testified at the hearing before the ALJ. *See* Tr. 61-67. The ALJ asked the VE to consider a person with Plaintiff's age, education, and vocational background who was physically and mentally limited in the way in which the ALJ determined Plaintiff to be. (Tr. 63). The VE opined such an individual could not perform Plaintiff's past work, but could perform other jobs such as a laundry worker, janitor, or dish washer. (Tr. 63-64).

ALJ Decision

In a written decision dated February 21, 2017, the ALJ found Plaintiff last met the insured status requirements for DIB on December 31, 2014 and had not engaged in substantial gainful activity from her alleged onset date (January 2012), through her date last insured. (Tr. 12). She concluded Plaintiff had the severe impairments of: cervical disk disease, cervicalgia, anxiety disorder, and PTSD, but found these impairments (alone or in combination) did not meet or

medically equal the severity of a listed impairment. (Tr. 12-13). The ALJ then set forth Plaintiff's residual functional capacity ("RFC"):

> to perform medium work as defined in 20 CFR 404.1567(c) except: no overhead reaching with the right upper extremity, climbing, ropes, ladders, scaffolds, no balancing and performing the remaining postural activities on a frequent basis. In addition, the claimant could perform simple routine tasks that required little or no judgment and could perform skills that could be learned in no more than thirty days as stated in the Dictionary of Occupational Titles (DOT) (i.e. SVP of 2), in environments with no high production quotas as needed on an assembly line, in environments with no dangerous machinery, no unprotected elevations, and no commercial driving. In addition, the claimant could have occasional interaction with the public, co-workers and supervisors.

(Tr. 15-16). The ALJ found Plaintiff was unable to perform past relevant work (Tr. 23); was defined as "an individual closely approaching advanced age" on the date last insured *id*.; and had a limited education (Tr. 24). The ALJ concluded that, considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. *Id*. Thus, the ALJ found Plaintiff not disabled "from July 15, 2009[3] the alleged onset date, through December 31, 2014, the date last insured." (Tr. 25).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health &*

---

3. Here, it appears the ALJ mistakenly used the non-amended onset date. *See* Tr. 34 (oral motion to amend).

7

*Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 404.1520—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to

8

establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff raises a single challenge to the ALJ's decision – the RFC is without evidentiary support. (Doc. 9, at 7-9). Specifically, Plaintiff argues the ALJ erred in finding she could work at a medium exertional level. *Id.* The Commissioner responds that substantial evidence supports the RFC. (Doc. 10, at 8-19). For the reasons stated below, the undersigned agrees with the Commissioner and affirms the decision.

A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). An ALJ must consider all symptoms and the extent to which those symptoms are consistent with the objective medical evidence *Id.* § 404.1529. While an ALJ must consider and weigh medical opinions, the RFC determination is expressly reserved to the Commissioner. *Ford v. Comm'r of Soc. Sec.*, 114 F. App'x 194, 198 (6th Cir. 2004); 20 C.F.R. §§ 404.1527(e)(2), 404.1546. The Court must affirm "so long as substantial evidence also supports the conclusion reached by the ALJ" even if substantial evidence or indeed a preponderance of the evidence *also* supports a claimant's position. *Jones*, 336 F.3d at 477.

To support her argument that she is more physically limited than determined by the ALJ, Plaintiff relies on three pieces of evidence. *See* Doc. 9, at 6-9. These are: first, Plaintiff's testimony that she could not carry a feed bucket *Id.* at 7-8 (citing Tr. 56-57); second, an MRI from 2009

(prior to her alleged onset date) which, Plaintiff argues, showed "compromise of cord and root", *id.* (citing Tr. 287-88); and third, Dr. Sethi's opinion, which Plaintiff argues is inappropriately vague, *id.* (citing Tr. 364). The undersigned addresses Plaintiff's arguments in this order.

*Testimony Regarding Lifting Abilities*

First, Plaintiff argues that nothing in the record supports the ALJ's finding that she is capable of the lifting requirements of "medium work". (Doc. 9, at 7). Under the regulations, "[m]edium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c). As evidence she cannot perform the requirements of "medium work", Plaintiff points to testimony where she detailed her inability to carry a three to four-gallon feed bucket filled with corn. (Doc. 9, at 8) (citing Tr. 57). With her brief, Plaintiff attached a volume to weight conversion chart showing the weight of one gallon of shelled corn. *See* Doc. 9, at 10-11. Using the conversion chart, Plaintiff argues that a four-gallon bucket of feed corn weighs 24.08 pounds, and a three-gallon bucket weighs 18.06 pounds. *Id.* at 8. Thus, her testimony that she was no longer able to carry her feed bucket – which presumably weighed between 18.06 and 24.08 pounds – demonstrates that she is unable to work at the medium exertional level which requires "frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c).

While the ALJ did not specifically reference the feed bucket, she did address the credibility of Plaintiff's testimony.[4] *See* Tr. 17, 20. Under the regulations, an ALJ is required to consider a

---

4. Social Security Regulations previously used the term "credibility" for evaluating a Plaintiff's subjective report of symptoms. *See* SSR 96-7p, 1996 WL 374186. In March 2016, the Social Security Administration issued new Social Security Ruling 16-3p, which eliminated "'the use of the word 'credibility' . . . to 'clarify that the subjective symptoms evaluation is not an examination of an individual's character.'" *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016) (quoting SSR 16-3p, 2016 WL 1119029, at *1). Both SSR 96-7p and SSR 16-3p direct the ALJ to evaluate an individual's subjective report of symptoms with the factors listed in 20 C.F.R.

claimant's statements about their symptoms, however, "there must be objective medical evidence from an acceptable medical source that shows. . . a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged[.]" 20 C.F.R. § 404.1529. In determining whether a claimant has disabling symptoms, the regulations also require an ALJ to consider certain factors including: 1) daily activities; 2) location, duration, frequency, and intensity of pain or symptoms; 3) precipitating and aggravating factors; 4) the type, dosage, effectiveness, and side effects of any medication; 5) treatment, other than medication, to relieve pain, 6) any measures used to relieve pain, and 7) other factors concerning functional limitations and restrictions due to pain or other symptoms. *Id.*; SSR 16-3p, 2017 WL 5180304, at *7 ("In addition to using all of the evidence to evaluate the intensity, persistence, and limiting effects of an individual's symptoms, we will also use the factors set forth in 20 CFR 404.1529(c)(3)[.]"). Although the ALJ must "consider" the listed factors, there is no requirement that the ALJ discuss every factor. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009).

As to Plaintiff's credibility, the ALJ explained:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> ***
>
> [W]hile the claimant had medically determinable physical impairments that could reasonably cause some symptoms and limitations, I find the allegations are broader

---

§ 404.1529. SSR 16-3p, 2017 WL 5180304, at *7; 1996 WL 374186, at *2. Thus, while the term "credibility" was eliminated, prior case law is still applicable as both regulations refer to the two-step process in 20 C.F.R. § 404.1529. *See Pettigrew v. Berryhill*, 2018 WL 3104229, at *14 n.14 (N.D. Ohio) ("While the court applies the new SSR, it declines to engage in verbal gymnastics to avoid the term credibility where usage of the term is most logical. Furthermore, there is no indication that the voluminous case law discussing and applying the credibility or symptom analysis governed by SSR 96–7p has been invalidated by SSR 16–3p."), *report and recommendation adopted by* 2018 WL 3093696.

and more restricted than was established by the medical evidence. This is not to say that the claimant was symptom free or did not experience difficulty performing some tasks. However, the objective evidence did not demonstrate the existence of limitations of such severity as to have precluded the claimant from performing all work on a regular and continuing basis at any time from the onset date of disability through her date last insured.

(Tr. 17, 20).

Turning to the objective evidence, the ALJ cited (among other things) a lack of a consistent treatment history. (Tr. 17-18). The ALJ first noted a lack of treatment from the alleged onset date in January 2012 until May 2012 where Plaintiff saw her primary care provider only for fatigue and weight gain. (Tr. 17) (citing Tr. 312). The ALJ pointed to another significant break in treatment from June 2012 where she reported shoulder pain to Dr. Evanoff (Tr. 310), through November 2013 where she saw Dr. Evanoff for back tenderness (Tr. 305). (Tr. 18). Plaintiff next saw a thyroid specialist for an unrelated condition in February 2014 (Tr. 397), and again did not seek medical care until a June 2014 appointment with Dr. Evanoff where she complained of leg pain (Tr. 303). Plaintiff saw Dr. Evanoff for bronchitis symptoms, with no mention of leg pain in November 2014 (Tr. 296), and did not seek further treatment for her cervical disc disease until September 2016 – over one year past her date last insured (Tr. 417). (Tr. 18). A lack of treatment is a legitimate reason on which the Commissioner may rely to discount credibility. *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x, 719, 727 (6th Cir. 2013) (minimal treatment or lack of treatment is valid reason to discount severity and credibility); *see also* SSR 16-3p, 2017 WL 5180304, at *8 ("[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints . . . we may find the alleged intensity and persistence of an individual's symptoms inconsistent with the overall evidence of record.").

Later in her opinion, the ALJ noted that – when Plaintiff did receive treatment – it was rather conservative. (Tr. 19). For example, Plaintiff saw Dr. Evanoff for left shoulder pain in June

2012 where, on examination, he found Plaintiff may have a cervical nerve root impingement that would need to be surgically corrected. (Tr. 311). Plaintiff did not have surgery and did not see a physician again for pain until two years later when, in June 2014, she saw Dr. Evanoff for leg tenderness and restless leg syndrome. (Tr. 303). On examination, Dr. Evanoff found Plaintiff had mild tenderness in her Achilles tendon, and prescribed medication for restless leg syndrome. (Tr. 304). At a follow-up visit with Dr. Evanoff the following month, Plaintiff still had mild tenderness in the Achilles tendon. (Tr. 301). Dr. Evanoff prescribed a heel-cup and advised her to "return when necessary". *Id*. The record does not reflect that Plaintiff returned to Dr. Evanoff for pain following this visit. As noted above, an ALJ does not err when she considers such a conservative treatment history when assessing Plaintiff's credibility. *Rudd*, 531 F. App'x at 727; *Walters,* 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence."); *McKenzie v Comm'r of Soc. Sec.*, 2000 WL 687680, at *13 (6th Cir.) (Plaintiff's non-aggressive treatment undermined his complaints of disabling pain); *Howell v. Comm'r of Soc. Sec.*, 2018 WL 1224513, at *7 (S.D. Ohio) (holding that an ALJ did not err in formulating RFC when he considered "Plaintiff's relatively conservative treatment – namely that he did not require surgical intervention, consistent use of a TENs unit, epidural steroid injections, the use of an assistive device or any other treatment modality commonly seen with disabling impairments [.]").

For the reasons discussed above, the undersigned finds no error with the ALJ's credibility assessment.

*2009 MRI*

As further evidence she is unable to work at a medium exertional level, Plaintiff points to the April 2009 MRI reviewed by Dr. McCormick. (Tr. 286). Plaintiff notes the MRI revealed a

"compromise of cord root" and she opines "that means the herniation was pushing against the spinal cord and the root nerves at the C5-C6 . . . it is not surprising that Plaintiff experienced severe pain when she tried to lift any weight . . . certainly she could not have lifted and carried 25 pounds for 5 hours in an 8-hour workday." (Doc. 9, at 8). Of note, this evidence pre-dates the relevant time period by almost three years and Plaintiff points to no other objective evidence of record.

Even so, the ALJ considered the MRI, finding it:

> [s]howed evidence of mild degenerative disc disease; however, there was no further testing or treatment after this remote imaging study and nothing reflects greater than mild findings. (1F). The above stated conditions have been managed medically and conservatively and should be amenable to proper control by adherence to recommended medical management and medication compliance. No aggressive treatment was recommended or anticipated.

(Tr. 13). Thus, the ALJ acknowledged the MRI showed evidence of disc disease, however, the ALJ also (again) considered Plaintiff's minimal and conservative treatment history following this diagnosis. *Id*. For example, at her 2009 appointment with Dr. McCormick, Plaintiff expressed a desire to proceed with surgical intervention (Tr. 288), but never followed through, and there is no indication in the record she ever returned to Dr. McCormick. Again, as discussed above, a minimal and conservative treatment history may be considered by the ALJ when arriving at her RFC. *See McKenzie*, 2000 WL 687680, at *13 (Plaintiff's non-aggressive treatment undermined his complaints of disabling pain); *Howell*, 2018 WL 1224513, at *7 (holding that an ALJ did not err in formulating RFC when he considered "Plaintiff's relatively conservative treatment – namely that he did not require surgical intervention, consistent use of a TENs unit, epidural steroid injections, the use of an assistive device or any other treatment modality commonly seen with disabling impairments [.]"). And importantly, "the mere diagnosis of [an impairment], of course, says nothing about the severity of the condition." *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir.

1988). For these reasons, the undersigned finds no error in the ALJ's consideration of the April 2009 MRI results.

*Dr. Sethi*

Lastly, Plaintiff argues Dr. Sethi's opinion that her "ability to do work-related physical activities such as sitting, standing, walking, lifting, carrying and handling objects may be slightly affected" is significant. (Doc. 9, at 8-9) (quoting Tr. 364). Plaintiff does not offer a specific argument as to *why* the opinion is significant, however. Here, she quotes the only "opinion" proffered by Dr. Sethi and even acknowledges "[the] opinion is highly vague". *Id*.

The ALJ addressed Dr. Sethi's opinion and gave several reasons for assigning the opinion "only some weight". (Tr. 19). The ALJ found:

> This assessment is consistent with his objective findings, noting only mild to moderate tenderness on exam, but otherwise reflecting normal strength, normal gait, normal sensation, and an ability to perform exertional motion (walking) and postural movements (squatting). Yet, his general statement noted that the claimant would be "slightly limited" and this is vague in nature, as it does not provide specific functional limitations.

*Id*. (internal citations omitted).

Substantial evidence supports the ALJ's finding regarding Dr. Sethi's opinion. As a consultative examiner, Dr. Sethi's opinion is not entitled to controlling weight, however, the ALJ must weigh the opinion under the same factors as a treating physician, including the supportability and consistency of the opinion. *See* 20 C.F.R. § 404.1527(c)(3)-(4). The ALJ is not required to provide "good reasons" as she must for a treating physician's opinion, but her decision must still be supported by substantial evidence. *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011). The ALJ's decision "must say enough 'to allow the appellate court to trace the path of his reasoning'". *Id*. (quoting *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995).

In support of her decision, the ALJ pointed out that Dr. Sethi failed to provide *any* specific functional limitations, only proffering a very broad opinion that Plaintiff was "slightly limited" in her ability to perform some work-related functions. (Tr. 19) (citing Tr. 364). As she did here, an ALJ may reject a consultative examiner's opinion (or portions of it) because it is vague or unclear. *See Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 440 (6th Cir. 2010) (an ALJ gave "good reasons" when he did not assign controlling weight to a treating physician's opinion he found "too inconsistent and unclear to be helpful"); *see also Gaskin v. Comm'r of Soc. Sec.,* 280 F. App'x 472, 476 (6th Cir. 2008) (an ALJ properly rejected portions of a non-treating physician's opinion he found "vague and not defined"). Here, the ALJ properly accorded Dr. Sethi's opinion "some weight" due to the vague nature of the opinion statement. (Tr. 19). Further, Dr. Sethi did not offer any functional limitations which could be incorporated into an RFC by the ALJ. Moreover, Plaintiff does not explain how, even if the ALJ adopted Dr. Sethi's opinion, it would change the RFC. Thus, the undersigned finds no error in the ALJ's assessment here.

In sum, for the reasons discussed above, the undersigned finds the ALJ properly assessed Plaintiff's credibility, and properly discussed the 2009 MRI, and properly discounted Dr. Sethi's opinion. Thus, the ALJ's determination that Plaintiff is capable of "medium work" supported by substantial evidence.

## CONCLUSION

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying DIB supported by substantial evidence and affirms that decision.

  s/James R. Knepp II
United States Magistrate Judge